[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was returned to court on November 5, 1996. Plaintiff's second amended complaint consisted of three counts. The second count was withdrawn by the plaintiff before the trial commenced. The first count alleges that the defendant, an attorney at law, agreed to represent the plaintiff without charging her a fee in her personal injury claim arising out of a motor vehicle accident which occurred on September 27, 1993. The first count alleges that defendant successfully settled her case on or about September 15, 1994 for $50,000.00 but contrary to his promise to her charged her a substantial fee. Plaintiff also claims that the defendant denied her access to the full settlement proceeds and failed, neglected and refused to remit the entire settlement proceeds to her. CT Page 9035
Plaintiff's third count alleges the defendant intended to and did cause the plaintiff to suffer severe emotional distress and mental anguish.
The defendant's answer admitted that he undertook to represent the plaintiff in a personal injury action and that he agreed that he would do so without requiring the plaintiff to suffer fee for this service.
At the bench trial both parties testified and each offered a series of Exhibits: Exhibits A, B, D, E, F and H were offered by the plaintiff and consisted of a series of checks drawn on defendant's trustee account; defendant's Exhibits 1, 2 and 3 also consisted of a number of checks drawn on defendant's trustee account.
The court's examination of these 33 checks permits it to find that the checks fit into several different categories. All but two checks were made payable to the plaintiff, drawn on defendant's trustee account endorsed by the plaintiff and cashed by the plaintiff.
Category one consists of two trustee checks, (Defendant's Exhibit 1) both were dated October 3, 1994; #3896 is in the amount of $3,333.33 and was made payable to Allstate Insurance; #3897 in the amount of $1,666.67 was made payable to Attorney Ronald Kittredge. Attorney Kittredge testified that these two checks were drawn to satisfy Allstate's no-fault lien arising out of the motor vehicle accident of September 27, 1993. It is apparent to the court that check #3897 in the amount of $1,666.67 which was made payable to Attorney Ronald Kittredge was a fee taken by him from funds payable in satisfaction of plaintiff's claim.
The court finds that Attorney Kittredge took a fee in the amount of $1,666.67 despite his agreement with the plaintiff that he would charge her no fee for services involved in representing her in her personal injury claim. The court finds that Attorney Kittredge breached his agreement in this respect by charging her a fee in that amount.
Category two consists of eight checks all drawn on defendant's trustee account made payable to and cashed by plaintiff. These checks total in amount of $6,100.00. These CT Page 9036 checks are as follows: check #3849 dated April 7, 1994, #3793 dated November 26, 1993; #3796 dated December 1, 1993; #3803 dated December 13, 1993; #3805 dated January 3, 1994; #3811 dated January 24, 1994; #3815 dated January 27 1994; #3816 dated January 31, 1994. All of these checks are marked as advances. The defendant recorded these checks on the inside of his file cover (Plaintiffs Exhibit J). All of the checks were received by the plaintiff prior to the receipt of the settlement proceeds. Plaintiff admits she received the proceeds of these checks but insist that she repaid these advances prior to the date of the settlement. The defendant denies that plaintiff paid off these advances prior to receiving the settlement proceeds. Plaintiff offered no documentary evidences to corroborate her testimony that she had repaid the advances prior to the date of the settlement.
Category three consists of six checks all drawn on defendant's trustee account and all payable to and endorsed by and cashed by the plaintiff. Check #3857 dated May 17, 1994 is in the amount of $1,150.00; #3858 dated May 18, 1994 is in the amount of $925.00; #3861 dated June 3, 1994 is in the amount of $1,000.00; #3862 dated June 6, 1994 is in the amount of $200.00; #3867 dated June 28, 1994 is in the amount of $300.00; and check #3868 dated June 29, 1994 is in the amount of $1,375.00 (Defendant's Exhibits 2 and 3). These checks total in amount of $4,950.00. All of these checks were paid over to the plaintiff prior to the receipt of the settlement proceeds. They are not listed on plaintiff's Exhibit J which comes from the defendant's file cover and which listed those checks which represented advancements to the plaintiff.
The court finds that these checks originated from a transfer of a check in the amount of $6,050.00 from the plaintiff to the defendant which transfer was made prior to May 17, 1994. Plaintiff had obtained this check from a client for whom she had done an art restoration. Defendant asserted that the plaintiff had money management problems and asked him to hold the funds for her and to return it to her in installments. This evidences indicates that he repaid her only $4,950.00 from the total of $6,050.00 he had received and deposited in his trustee account. The court finds that the defendant took the sum of $1,100.00 from these funds and repaid himself for the advance he had made to the plaintiff on April 7, 1994 in check #3849 (Defendant's Exhibit 2). CT Page 9037
The fourth category of checks offered in evidences by the plaintiff consist of seventeen checks drawn on defendant's trustee account. All of these checks were made payable to the plaintiff who admitted that they were tendered to her by the defendant at various times in response to her demand that the defendant remit to her the entire settlement proceeds in one lump sum. Plaintiff stated that the defendant changed his mind about charging her a fee once she signed the release and endorsed the settlement check for deposit in his trustee account. She stated that he charged her a fee of $15,000.00 which he obtained from the first twelve checks referred to in Exhibits D, E and F these checks total $30,000.00, the first four checks were dated October 3, 1994 (Exhibit D), the second group consisted of four checks dated October 18, 1994 (Exhibit E) and two checks were dated December 6, 1994 (Exhibit F) and another two were dated January 19, 1994 also (Exhibit F). All of these checks were in the amount of $2,500.00, the total of these checks were $30,000.00.
In order to obtain his fee in cash the defendant would prepare the checks, pick up the plaintiff in his car and drive her to one or more banks where the plaintiff would cash the checks while defendant remained in his car. On each occasion, October 3, 1994, October 18, 1994, December 6, 1994 and January 19, 1994 the plaintiff returned to the defendant's car and turned over to him exactly one-half of the money she obtained from the banks, that is $15,000.00.
The defendant denies that he received a $15,000.00 fee from the plaintiff, he testified that the plaintiff did give him $15,000.00 on the occasions mentioned but the sums given to him were gifts and were not fees. The plaintiff received five other checks from the defendant totaling $10,600.00 i.e. $1,000.00 on March 23, 1995 (Exhibit G), $2,000.00 on April 5, 1995 (Exhibit G), $2,000.00 on April 5, 1995 (Exhibit G), $1,600.00 on August 2, 1995 (Exhibit H) and $4,000.00 on December 29, 1995 (Exhibit H). The plaintiff made no claim at the hearing that the defendant took any fee from these installments. She stated however that some of these installments were forthcoming only after her brother intervened with the defendant.
Plaintiff testified that in early 1992 she had retained defendant to represent her in a contested divorce case and to represent her in a separate foreclosure action. Shortly thereafter she became involved in a romantic relationship with him. Because of financial difficulties the defendant assumed CT Page 9038 control of her affairs. After her motor vehicle accident of September 27, 1993 her financial situation deteriorated because she could not work. Plaintiff initially consulted other attorneys in regard to her personal injury claim but was reluctant to obligate herself to the usual contingent fee. Defendant offered to represent her without charging a fee and she consented. In late November of 1993 the defendant began advancing her funds to plaintiff against her potential recovery in her motor vehicle accident. He continued this practice through April 7, 1994, the advances totaled $6,100.00 category two.
During this time the plaintiff resumed some of her art restoration work. She stated she turned over clients checks to the defendant to reimbursement him for the advances he made to her. Defendant denies she repaid any of these advances but acknowledges receipt of one check in the amount of $6,050.00 from the plaintiff. He admitted he reimbursed himself for the $1,100.00 advance to plaintiff on April 7, 1994 (Exhibit 2) and returned the balance of $4,950.00 to the plaintiff in installments (Exhibits 2 and 3).
During this time plaintiff obtained the sum of $5,000.00 from her liability insurer pursuant to her no-fault coverage for lost wages and medical expenses arising out of the September 27, 1993 motor vehicle accident. When defendant settled plaintiff's case and received the settlement check of $50,000.00 he repaid the no-fault lien to the carrier compromising the $5,000.00 claim for $3,333.33 and thereafter paid himself a fee of $1,667.67 in violation of his agreement with plaintiff.
Over the period of time from early 1992 until shortly before the settlement proceeds became available in October 1994 the plaintiff ardor for the defendant cooled when she realized that the defendant would not divorce his wife and marry her. When the settlement was concluded she signed the release and the check in the expectation that the defendant would honor his agreement. Defendant refused her request for the proceeds and told her he was going to take a fee. She acceded to his demand because she was desperate for funds. She contends that defendant used the peculiar method of paying her in installments in order to continue their deteriorating relationship and also to secure sexual favors from her.
The defendant asserts he paid over the entire proceeds of the $50,000.00 settlement check to plaintiff because that was the way CT Page 9039 she wanted it paid in installments. He admits he reimbursed himself for his advances which were then $5,000.00 and repaid the no-fault carrier $3,333.33 and paid himself $1,666.67 before making any distributions to the plaintiff. He offered no explanation or justification for taking this latter sum. He also admits that he received $15,000.00 of the remaining proceeds and insists it was given to him as a gift by the plaintiff. He denies dominating and controlling the plaintiff contending that the adulterous relationship he pursued with plaintiff was consensual and reciprocal and did not exceed the bounds of a normal attorney-client relationship.
The court concludes that the attorney allowed his infatuation with the plaintiff to override the attorney-client relationship and permitted him to exercise an improper degree of control over the plaintiff's funds. This extra marital relationship with plaintiff a person who clearly enjoyed a client status constituted a conflict of interest for the defendant attorney. The defendant never properly accounted to the plaintiff for the funds entrusted to him from the settlement. The defendant breached his agreement with the plaintiff and converted $16,667.67 of the plaintiff's funds to his own use. The court finds that this sum was in fact a fee and rejects the defendant's disingenuous argument that it was a gift and therefore outside the ambit of § 52-251c of the General Statutes and Rule 1.5 of the Rules of Professional Conduct.
The court can reach no other conclusion then that the conduct of the defendant violated both of these regulations causing damage to the plaintiff.
Accordingly Judgment may enter for the plaintiff on the first count in the amount of $16,667.67 plus interest in the amount of $5,000.10 together with costs.
The court finds that the plaintiff has failed to sustain her burden of proof on the third count in that she failed to establish that the defendant intentionally caused her emotional distress or that the defendant should have realized his conduct involved an unreasonable risk of causing emotional distress and that distress might result in illness or bodily harm.
Dorsey, J. Judge Trial Referee CT Page 9040